In re Shirley ROSS, Debtor.

In re Willie O. Nelson and Sarah Nelson, Debtors.

In re Gary Lee Moore and Kathy Robinson Moore, Debtors.

In re Rickey Rodell Ray, Debtor.

In re Bennie R. Ratliff, Jr., Debtor.

In re Beatrice W. Strong, Debtor.

In re Julie Lenay Walker, Debtor.

In re Kenney David MacDonald, Debtor.

Nos. 04–28540whb, 04–28546whb, 04–28724whb, 04–28827whb, 04–28856whb, 04–30363whb, 04–30663whb, 04–30921whb.

United States Bankruptcy Court, W.D. Tennessee.

Aug. 4, 2004.

Bo Luxman, Memphis, TN, for Shirley Ross.

James A. Cohen, Memphis, TN, for Willie O. and Sarah Nelson and for Beatrice W. Strong.

Darrell L. Castle, Memphis, TN, for Gary and Kathy Moore and for Julie Walker.

Jimmy E. McElroy, Memphis, TN, for Rickey Ray.

J.W. Vaughan, Jr., Memphis, TN, for Bennie R. Ratliff, Jr.

B. David Sweeney, Memphis, TN, for Kenney MacDonald.

## MEMORANDUM OPINION ON UNITED STATES TRUSTEE'S OR CASE TRUSTEE'S MOTIONS TO DISMISS OR TRANSFER VENUE OF CASES

WILLIAM H. BROWN, Bankruptcy Judge.

In each of these cases but one, and in numerous other chapter 7 and 13 consumer cases that were recently filed in this judicial district, the United States trustee has filed motions to dismiss the cases due to improper venue or to transfer them to the Northern District of Mississippi or the Eastern District of Arkansas where these debtors reside. In the case of Beatrice W. Strong, the chapter 7 trustee filed a motion seeking a transfer of the case to the Eastern District of Arkansas where that debtor resides. Objections to the motions have been filed, or expressed in open court, and the Court took the venue issues under advisement. Memoranda were filed

by the United States trustee and by counsel in some of the cases, and the Court has considered those. There are no disputes of relevant facts and the issues may be decided based upon the undisputed facts, as found in the debtors' petitions and schedules, the applicable law and federal rules. This opinion contains this Court's conclusions of law. It is important to note that this opinion does not necessarily speak for all four bankruptcy judges in this district, and similar motions may be pending before other judges, who may arrive at other conclusions.

## FACTS

In each of these cases, the debtors are consumer debtors having filed either chapter 7 or chapter 13 petitions under the Bankruptcy Code. In each of the cases except the ones filed by Ms. Strong and Ms. Walker, the debtors have their residence and/or domicile in the state of Mississippi, as evidenced by the addresses and statements found in the petitions and schedules. Ms. Strong's residence is in Proctor and Ms. Walker's residence is in West Memphis, both in the Eastern District of Arkansas. None of these debtors assert that they had residences or domiciles in the Western District of Tennessee for any period of time prior to the bankruptcy filings, and each of the debtors takes the position that venue, although technically improper in this district, may be waived by the debtors as well as by creditors. Some of the debtors in these and other cases before this Court have left the venue boxes on the bankruptcy petition, official bankruptcy form 1, blank, in order to bolster their position that they filed bankruptcy here on the theory that proper venue was unnecessary or waivable. This is not the first time that similar venue issues have been presented to this Court, as will be seen by later discussion of case authority from this district, but these cases represent some of the first in which the United States trustee for this region has initiated motions objecting to the debtors' venue choice.

The motions address a significant issue. The statements of debtors' attorneys in court indicate that there has been a prevalent practice of consumer debtors' attorneys filing in this district, notwithstanding the debtors' residency in Mississippi. To a lesser degree, there have been filings in this district by individual debtors who reside in Arkansas. Subsequent to hearing the first motions, the Court inquired of the Clerk's office as to whether data was available for the number of Mississippi and Arkansas residents filing in the Western District of Tennessee. The data system reported that during the month of June, 2004, 93 cases were filed by individuals with Mississippi addresses and 22 were filed by those with Arkansas addresses. For the twelve months ended June 30, 2004, 1062 cases were filed by debtors who listed a Mississippi address. For that same twelve months, 324 cases were filed by debtors who listed an Arkansas address. Of course, some of those debtors' cases could be properly venued here if they had lived in this district for the greater part of the 180 days preceding the bankruptcy filing, or if they owned principal assets or a business located in this district, but it would be a safe assumption that a majority of those filers are like these debtors, who filed in this district without meeting one of the statutory requirements for venue here.[1]

Looking at each of these cases, the following information appears in the petitions:

---

1. The United States trustee suggests that the true number of filings in this district by Mississippi and Arkansas residents over a recent eighteen month period is closer to 3,000.

| Debtor | Venue Box | Exemption Claimed | Tenn. address | Asset in Tenn. |
| --- | --- | --- | --- | --- |
| Shirley Ross | Checked | Tennessee | No | No [2] |
| Willie & Sarah Nelson | Blank | Mississippi | No | No |
| Gary & Kathy Moore | Checked | Mississippi | No | No |
| Ricky Ray | Checked | Mississippi | No | No |
| Bennie Ratliff, Jr. | Blank | Mississippi | No | No [3] |
| Beatrice Strong | Blank | Arkansas | No | No |
| Julie Walker | Checked | 11 U.S.C. § 522 | No | No [4] |
| Kenny MacDonald | Checked | Mississippi | No | Account [5] |

## ISSUES

The issues addressed in this opinion include:

1. Whether 28 U.S.C. § 1408's provisions for venue of cases filed under Title 11 are exclusive choices or whether debtors may opt to file bankruptcy where it is more convenient for them;

2. Whether 28 U.S.C. § 1412 and/or Bankruptcy Rule 1014 permit the bankruptcy court that receives an improperly venued case to retain the case over an objection, or whether that court only has the choice to transfer or dismiss the case;

3. Whether the United States trustee for this region and the case trustee have standing to file venue motions in these cases; and whether the debtor's choice of venue may trump the objections;

4. Whether the consumer debtor's place of employment, or the locale of the debtor's attorney, or the debtor's maintenance of a checking account in a Tennessee bank is a relevant factor in the venue analysis; and

5. Although not decided in this opinion, whether the practice of consumer debtors and their attorneys to knowingly file bankruptcy in an improper venue raises ethical concerns that might be faced in future cases.

## APPLICABLE STATUTES AND RULES

The venue for bankruptcy cases filed under Title 11 of the United States Code is found in 28 U.S.C. § 1408:

Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district—

(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such

2. Notwithstanding claiming Tennessee exemptions, this debtor listed no Tennessee address within two years of filing. *See* discussion on exemption later in this opinion.

3. This debtor listed a bank account for $100 in Union Planters Bank but furniture and other personalty located in Mississippi, and the debtor claimed the account as exempt under Mississippi law.

4. This debtor listed a checking account in National Bank of Commerce but claimed it

exempt under 11 U.S.C. § 522, which is not applicable in Tennessee, a state opting out of the federal bankruptcy exemptions. The debtor resides in Arkansas, which has not opted out of the bankruptcy exemptions.

5. This debtor listed a checking account in Union Planters Bank and listed it as exempt under Mississippi law. The debtor claimed this account to be a principal asset in Tennessee, an argument discussed further in this opinion.

one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or

(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

There are other venue provisions in Title 28 for proceedings in bankruptcy cases and ancillary cases, but those provisions are not relevant to this discussion.

As to change of venue, 28 U.S.C. § 1412 provides: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Although these statutes refer to the "district court," the bankruptcy court is a unit of the district court, 28 U.S.C. § 151, and no one in these cases has disputed that the bankruptcy court stands in the place of the district court for purposes of the venue statutes.

Bankruptcy Rule 1014 address dismissal and transfer of cases, providing in part:

> Cases Filed in Improper District. If a petition is filed in an improper district, on timely motion of a party in interest and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the case may be dismissed or transferred to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties.

Fed. R. Bankr.P. 1014(a)(2).

■ A contested motion concerning a debtor's venue choice is a core proceeding. 28 U.S.C. § 157(b)(2)(A); Lawrence P. King, Collier on Bankruptcy ¶ 4.04[1] (15th ed. revised 2004) [hereinafter "Collier"].

## DISCUSSION

### Statutory and Rule Construction

■ This Court is well aware that venue is a controversial topic, upon which judges and others have differing views. Venue, of course, is not the same as jurisdiction, and "[a]s is true with respect to venue generally, venue of a case can be waived by express agreement or by conduct." Collier ¶ 4.01[1]. Notwithstanding that improper venue of a case may be waived by all parties in interest, the initial question remains, "what is the proper venue for an individual's case?" It is the federal venue rule itself that uses the terms "proper" and "improper," and the Court must assume that those terms mean something. *See* Fed. R. Bankr.P. 1014(a). If Congress intended for debtors to be able to file in any bankruptcy court where they could assert convenience, the venue statute would have been so structured, and there would be little, if any, need for the rule to use the term "improper venue."

■ Beginning with the case venue statute, one source of disagreement among the courts is the use of the term "may," with the statute providing that "a case under title 11 may be commenced in the district court for the district," where either parts (1) or (2) of the statute permit. 28 U.S.C. § 1408. Some would interpret the initial "may" as giving options other than those found specifically in parts (1) or (2); in other words, "may *permits* rather than authorizes." *In re Lazaro*, 128 B.R. 168, 171 (Bankr.W.D.Tex.1991) (the court was addressing "may" as it appears in the venue transfer statute, 28 U.S.C. § 1412, rather than in § 1408). Thus, the argument would flow that since the case venue statute says "may" and does not specifically preclude other foundations for venue, and since improper venue is waivable, the debt-

or may have other options for his or her initial choice of venue.

The problem that this judge sees in this argument, outside of its result-oriented logic, is that it renders parts (1) and (2) of the statute meaningless. If those are mere examples of what Congress intended as a basis for venue, wouldn't Congress have included such language as "including but not limited to?" Or, why would the examples have been given at all? What critics of the current case venue statute may prefer is something along the lines of venue being appropriate wherever the individual debtor is employed, or wherever the debtor has some minimal contacts, or wherever the convenience of the debtor dictates. That, however, is a congressional call, not a judicial one, and Congress has had before it in past sessions as well as the current one potential changes in the venue statute. Until Congress makes a change, this Court feels obligated to apply the venue statute as written.

**The Venue Statute and Convenience**

As to the specific cases at hand, the factual background is that these are individual debtors who are residents of Mississippi or Arkansas but who chose to file in the Western District of Tennessee under either chapter 7 or 13 basically for reasons of convenience, either their own or their attorney's. Even though we are not dealing in these contested motions with corporate debtors, or individual debtors under chapters 11 or 12, the venue statute is the same for all chapters and debtors, and, of course, one problem with these debtors' approach to venue is that to permit filings where it is more convenient to the debtor would leave the same door open to debtors in other chapters. But the focus of this opinion will remain on individual debtors under chapters 7 or 13.

The debtors argue first that it would be inconvenient and costly for them to have their cases transferred to another district, since they have already expended funds for their attorneys, and perhaps filing fees, in the Western District of Tennessee. This puts the convenience argument, which is a transfer consideration, before the initial venue choice. The case venue statute itself, 28 U.S.C. § 1408, at no place mentions convenience. The change-of-venue statute, 28 U.S.C. § 1412, says that a court may transfer a case to another district, "in the interest of justice or for the convenience of the parties." And, the federal bankruptcy rule says that a case filed either in a proper or improper venue may be transferred "in the interest of justice or for the convenience of the parties." Fed. R. Bankr.P. 1014(a). More specifically, that rule provides that properly venued cases may be transferred and that improperly venued cases may be dismissed or transferred. *Id.* This Court concludes, therefore, that it is inappropriate to bootstrap convenience onto the venue statute, which must stand for its meaning upon its own language.

**Timeliness of Motions**

There is no dispute that each of these motions was timely, having been filed within a few days of the case filing and before significant administration of the cases in this district, so the requirement of Fed. R. Bankr.P. 1014(a)(2) for a timely motion is met. *See* Lawrence R. Ahern & Nancy Fraas MacLean, *Bankruptcy Procedure Manual* § 1014.02, at p. 81 (2004 ed.) ("A timely motion to change venue is a prerequisite to the court's power to do so.") (citations omitted). It is the time of filing of the venue motion that determines timeliness rather than when the Court actually hears the motion.

**Standing of United States trustee**

Does the United States trustee for this region have standing to file these

motions to dismiss the cases or transfer venue? Without demonstrating support for the position, some debtors' attorneys argue that surely the United States trustee shouldn't be permitted to file venue motions, especially when no actual creditors object to the debtors' venue choice. The initial problem with the argument is that the applicable rule does not limit venue objections to actual creditors; rather, it says that upon "timely motion of a party in interest," the motion shall be heard. Fed. R. Bankr.P. 1014(a)(1) and (2). Section 307 of title 11 gives broad standing: "The United States trustee may raise and may appear and be heard on any issue in any case or proceeding under this title but may not file a plan pursuant to section 1121(c) of this title." The "may" here is quite permissive and in contrast to the "may" in the venue statute, which is restricted by its subparts (1) and (2), section 307 specifically says, with one exception, that the United States trustee may raise and be heard on *any* issue in *any* case. As Collier puts it, "it is presumed they [the United States trustees] represent the public interest;" therefore, it is unnecessary for the United States trustees to demonstrate pecuniary interest as a foundation for standing. Collier ¶ 307.02; *see also United States Trustee v. Columbia Gas Sys. (In re Columbia Gas Sys.)*, 33 F.3d 294 (3d Cir.1994) (recognizing broad standing under § 307 without the necessity of a pecuniary interest in the controversy). This Court can see no reason why the United States trustee should be precluded from raising the venue issue. Perhaps the very fact that creditors are not inclined to object is justification for the United States trustee to

present the issue.[6] Certainly, the debtors are not going to object to their own choice, and if there is an abuse of the venue selection, the United States trustee fills a valid role in bringing it to the Court's attention. This Court concludes that, based upon § 307, it is clear that the United States trustee has standing to present and be heard on venue issues. *See In re Sauer*, No. 00–20058, 2000 WL 33712207 (Bankr.D.Idaho June 8, 2000) (implicitly acknowledging the United States trustee's standing to file a motion to transfer venue of a case from Idaho to Washington). A chapter 7 trustee also has standing to file such motions.

**No Prejudice by Transfer**

█ Some debtors say that they will be prejudiced by having their cases transferred to another district since the cases have already been filed here. This is a true circular argument: You can't attack my venue choice because I chose it. Under that approach, there would be no need for a venue statute at all, and certainly no need for the rule to mention improper venue. The debtors are hard-pressed to make the argument that they are prejudiced by their own knowing choice to file in a venue that is not specified under the case venue statute, and no evidence has been offered that these debtors would in fact be prejudiced by a transfer. Some small delay during a transfer process is not the same as legal prejudice. Assuming that the Court transferred the cases rather than dismissed them, the automatic stay remains in effect during the transfer and the debtors merely are required to pursue their cases in their home court

---

**6.** The Court notes that the venue statute makes no mention of the location of the debtor's creditors as a factor in deciding the initial proper venue, and the reality in today's bankruptcy world is that most creditors are national ones, relying upon electronic filings

of pleadings in more and more bankruptcy courts. Outside of the need in some instances for creditors to have an attorney appear in the bankruptcy court, it may be of little concern to creditors where the individual debtor's case is filed.

rather than in this district. In other words, this Court does not give weight to the debtors' cry that this Court should protect them from their own choice, or from their attorneys' choice.

In an expansion of this argument, some debtors' attorneys argued that chapter 13 debtors were better served by their attorneys and trustees in this district than in some others, but that is no principled basis upon which this Court should retain improperly venued cases. Assuming, for purposes of the argument, that this could be so, that could support this district taking all bankruptcy cases in the country. The Court has no basis to make a finding that debtors are served better or worse here than in other districts but declines to retain improperly venued cases on the basis of this argument.

## These Debtors' Venue Choice

Why did the debtors or their attorneys make this choice? Some debtors work in Shelby County, Tennessee, but live in Northern Mississippi or Arkansas, and they may have filed in Memphis because it was convenient to go from work to a Memphis attorney's office. Or, viewed somewhat cynically, the venue choice may actually be where the particular attorney practices bankruptcy law. Some debtors may have been drawn to a Memphis attorney due to that attorney's advertisement or reputation, meaning that the venue choice may have actually been the Tennessee attorney's rather than the individual debtor's. This Court has consistently commented in open court that there is nothing in the venue statute related to a debtor's attorney's locale. For whatever reason they filed here, the undisputed facts show that these debtors do not have their domicile or residence in Tennessee, nor do they have principal assets in this state (one debtor's argument that his checking account is a principal asset will

be discussed later), nor did they fall under the residency/domicile provisions for the greater part of the 180 days immediately prior to filing bankruptcy.

## Exemptions

■ These debtors are residents of Mississippi or Arkansas, each but two claiming that respective state's exemptions. In one case the debtor claims exemptions under Tennessee law, although she lives in Mississippi and has had no Tennessee address within the two years prior to the bankruptcy filing. One debtor, a resident of Arkansas, claims exemptions under the Bankruptcy Code's § 522, which is permitted in Arkansas since that state has not opted out of the federal bankruptcy exemptions. Although venue is not directly tied to exemptions, there is a logical link between them. Section 522(b)(2)(A) requires that, when state law exemptions are mandated, the applicable law is from that state where the debtor has been domiciled for the 180 days preceding the bankruptcy filing. Only if the domiciliary state has not opted out of § 522(d)'s bankruptcy exemptions may a debtor claim exemptions under that part of the Bankruptcy Code. It is logical to infer that Congress contemplated that an individual debtor's venue choice would be the same, in most instances, as the state of the debtor's exemption claim, since the 180–day prebankruptcy period is the same in both the venue and exemption statute. As will be implicated in the ethics addendum to this opinion, it is perhaps risky for Tennessee bankruptcy lawyers to file for non-Tennessee residents in this state without an understanding of the other state's exemption laws, or in the case of Arkansas, an appreciation for whether Arkansas exemptions or § 522(d) exemptions should be claimed. For purposes of examining whether these debtors' venue choices were appropriate, this Court finds it relevant to look at their choices of exemptions,

and in each of these cases exemption law other than Tennessee's would control.

### Checking the Venue Box

Three of these debtors left the venue box on the petition blank, a practice which may raise other questions not necessary to answer in this opinion. *See* the Ethics Addendum. The other debtors checked that venue was appropriate here, a practice that is likewise subject to question. Assuming that the debtor was advised that venue was not "technically" correct in this district, why would it be appropriate for that debtor to check that venue was correct under § 1408?

### Debtor's Place of Employment

■ The argument has been made that the case venue statute permits filings where the debtors are employed, but the case authority simply doesn't support this argument. This Court held in 1995 that it, along with the "majority of courts interpreting [28 U.S.C. § 1408(1) ] have consistently held that a 'salaried individual debtor's place of employment' does not equate to the 'place of business' specified in this statute." *In re Berryhill,* 182 B.R. 29, 30 (Bankr.W.D.Tenn.1995) (quoting *In re Petrie,* 142 B.R. 404, 405 (Bankr.D.Nev.1992), other citations omitted). Subsequent to *Berryhill,* this view continues to be the majority one. *See Blagg v. Miller (In re Blagg),* 223 B.R. 795, 802 (10th Cir. BAP 1998) (stating that only one opinion expresses a possible, but unclear, exception to this interpretation); *In re McDonald,* 219 B.R. 804, 805 (Bankr.W.D.Tenn.1998) (agreeing with *Berryhill);* Collier ¶ 4.01[2][c] ("Finally, it would seem that a salaried employee does not have a 'principal place of business,' as that term is used in section 1408."). This Court is not persuaded that its *Berryhill* decision was wrong or that the other authorities agreeing with *Berryhill* should be ignored; thus, this Court concludes again that an individual debtor's salaried employment in this district, while owning no interest in the employing business, does not provide a valid basis for venue of a bankruptcy case in this district.

### Bank Account as Principal Asset

■ One of these debtors argued that his checking account in a Memphis bank was his principal asset and that the asset was located in this district. This Court does not need to rule upon whether a bank account may ever be a debtor's principal asset, but in the cases at hand, such a finding can't be made. Mr. Ratliff scheduled $100 in his checking account and claimed it exempt under Mississippi law, and his other assets including household items were located in that state. Ms. Walker scheduled a small balance in her account and claimed it exempt under § 522(d), which may be applicable since she is a resident of Arkansas. Mr. MacDonald actually made the principal asset argument for his scheduled $215 checking account balance in a Memphis bank, and he claimed this as exempt under Mississippi law. Mr. MacDonald's other assets, household goods and other personalty, were located in Mississippi and their scheduled value exceeded the checking account balance. The venue statute does not require that only *the* principal asset may support venue; rather, venue may be proper in a district where principal assets are located. Thus, a debtor may have more than one appropriate venue based upon more than one principal asset. For these particular cases, however, there has not been a showing that the fact that checking accounts exist in a bank that has a Memphis location is equivalent to a principal asset being located here. These accounts are in national banks that have branches across state lines, including Mississippi. In the current financial reality,

ones checking account is an electronic transaction, transcending state lines. In the absence of proof that a debtor's money is actually located in this judicial district, this Court concludes that the mere fact that one has a checking account in a bank that happens to have an operation in this district does not in itself provide a valid basis for venue.

## Postpetition Assets

■ An argument has been made that these chapter 13 debtors have assets in this district now that they have filed here, since their plan payments go the Western District chapter 13 trustees. Of course, this can't be a basis for venue at the time of filing of the cases, since plan payments are postpetition events. The venue statute speaks to factors in existence prior to the bankruptcy filing, and the Court rejects the argument that it can find a valid basis for venue based upon what may happen after the filing of a bankruptcy case.

## Convenience Again and Costs

■ Should the Court consider that it is inconvenient or more expensive for these particular debtors to file in the Northern District of Mississippi, or the Eastern District of Arkansas? The debtors variously argue that it may be further for them to travel to their home court for hearings than to Memphis, or that there are fewer consumer bankruptcy attorneys, for example, in the Northern District of Mississippi than in Memphis, or that the chapter 13 trustee in the Northern District of Mississippi charges a higher expense percentage on plan payments than do the trustees in Memphis. All of these arguments, and similar ones, relate back to the convenience argument, and as already discussed, convenience is not mentioned in the case venue statute. Should it be? Perhaps, but that is a legislative decision, requiring a legislative fix, if needed. "If one accepts Debtor's argument that venue is a matter of 'mere convenience,' there would be no such thing as an 'improper' district." *In re Sauer,* 2000 WL 33712207, at *3. Let's look at some particular arguments relating to convenience or costs.

It has been stated that Southaven, Mississippi, for example, is a bedroom community of Memphis, since it is just across the state line and since many of its residents work in Tennessee. Even if those assertions are true, to permit Mississippi residents who live just across the line to file in Tennessee merely opens the door to those further south to file.[7] A cursory look at recent filings demonstrates that not all of the Mississippi residents who file here live just across the line. How far south should we permit Mississippi residents to file in Memphis? How far west from the Mississippi River should we permit Arkansas residents to elect to file in Memphis? How inconvenienced do the debtors have to be? And, what do we say to that Mississippi or Arkansas corporation, with no contact to Tennessee, when it decides to file here merely because it is physically located just across the state line, or has a Memphis attorney? The current venue statute involves a congressional drawing of lines, and some debtors are naturally affected, perhaps unfavorably, by those lines. The venue justifications for all debtors, until Congress changes the law, must be the same for all debtors. This Court cannot take it upon itself to remedy any

---

7. It may be that Southaven and other towns in Desoto County, Mississippi would object to being called a bedroom community of Memphis. According to almost daily newspaper and other news reports, that county is growing rapidly, with a population over 118,000. How many of those residents should we allow to file in Memphis? How do we draw the line between Desoto and other counties in Northwest Mississippi?

890

defects in the venue statute and protect other states' residents from their choices to reside in those states. If they file here, and no one objects, improper venue may be waived, but in the presence of a timely objection, this Court must conclude that venue is improper and that the venue statute must be enforced as written.

Will it cost more, in chapter 13 trustee fees/expenses or in debtors' attorney's fees if the cases are transferred to the proper district? As to attorney fees, again this is a circular argument: If the debtors or their attorneys had not made the incorrect venue choice in the first place, this wouldn't be a factor.[8] And, transferring the cases does not necessarily mean that the debtors must obtain new counsel. Although it is not before the Court in these motions, there may very well be ethical obligations of the attorneys who participated in the venue choices and the initial filings to continue to represent the debtors for the original fees in the Mississippi or Arkansas bankruptcy court, if they are permitted to practice in those courts. As to filing fees, if the debtors have already paid filing fees in this district, upon transfer of the cases, those filing fees are not due again. A transfer is not a new case, merely a transfer to the proper venue. As to whether the chapter 13 debtors will face higher chapter 13 trustee percentage fees and expenses on plan payments in Mississippi as compared to this district, there is no direct proof before the Court. But, the Court, for purposes of the argument, will assume this is true. As the United States trustee points out, however, this is a self-perpetuating result: If the reason for higher trustee percentages in the North-

ern District of Mississippi is due to that trustee's lower chapter 13 case load, we are contributing to the disparity. If this district freely permits filings by Mississippi chapter 13 debtors, based solely upon those debtors' preferred venue, we are inflating our filings and deflating the Northern District's chapter 13 trustee plan receipts. As a result, trustee fees and expenses would remain higher in that district than here. As a result, while retaining improperly venued cases here might financially benefit those debtors who filed here, we would be harming every other chapter 13 debtor in the Northern District who continues to pay a higher trustee percentage.

It is not that this Court wishes to burden another court, district, or trustee with more filings than they currently have, but the trustee percentage/higher costs argument does not support ignoring the case venue statute. Further, to permit some Mississippi residents to file in Memphis based on this higher expense theory would merely open the door wider for residents of that state who live further and further south, or further west from the Mississippi River for Arkansans, to make the same argument. From a policy viewpoint, for example, how would we tell Mississippians who live 50 miles from the state line that they are different from those who live 5 miles?

Is the debtor's attorney's financial stake a factor for the Court to consider? I don't think so, since it is the attorney who made, or participated in, the improper venue choice. If the attorney did not advise the client of the risk, that itself raises an ethi-

**8.** An argument was made that chapter 13 attorneys in this district accept clients without requiring front-end fees and that such attorneys in other states may require substantial front-end retainers. Assuming this to be true, that is not a justification for this Court to

retain improperly venued cases. To accept this argument would be to suggest that any debtor anywhere in the country that could obtain a less expensive attorney should be able to file bankruptcy wherever that attorney is.

cal issue not before the Court, and it will be assumed for this opinion that such a disclosure was made. Is an adverse venue outcome a surprise to regular bankruptcy practitioners in this district? It should not be since at least two judges have had published opinions since 1995 saying that venue is improper in this district for this type of Mississippi or Arkansas resident. *See Berryhill*, 182 B.R. 29 and *McDonald*, 219 B.R. 804. If these attorneys have received part or all of their fees, the Court can't ignore the case venue statute to remedy any refund or continued representation that may need to be given. Surely it can't be said that the bankruptcy court should protect its own bar of attorneys from the risk of an incorrect venue choice. What would I say to those Mississippi or Arkansas bankruptcy practitioners who lose clients when debtors use Memphis attorneys to file in Memphis?

It was argued that the Court should permit those current debtors who filed in this district to retain their cases here, and to send a message that future improperly venued cases would be transferred. There is no principle upon which this Court can say venue is improper but it will be ignored now in the face of an objection but won't be ignored tomorrow. To accept that argument amounts to a waiver of the improper venue, and if a waiver is justified today, it would be justified tomorrow. The Court declines to send a prospective ruling.

### Can Equity Trump the Statute?

 Should the Court apply some equity to remedy the problem? That has been suggested by some. As discussed already, it is difficult to permit the equity argument to trump the knowing choice made by the debtors and their attorneys. Moreover, as the Supreme Court has reminded us more than once, the bankruptcy court's equity power is no broader than the Bankruptcy Code. *See, e.g., Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000) (bankruptcy courts are limited by what the Bankruptcy Code provides). The venue statute is clear and the Court can't apply equity, while overlooking the statute.

### Dismissal, Transfer or Retention

Should the Court dismiss the cases or transfer them? May the Court retain the cases, notwithstanding their improper venue? Although its motion seeks alternative remedies, the United States trustee has not pressed for dismissal of the cases; rather, transfer to the proper venue is the remedy sought. A conclusion of law is required concerning the possibility of retention. This Court previously held in its *Berryhill* decision that under Rule 1014(a)(2), "the Court is not given the option of retaining the improperly venued case." 182 B.R. at 31. This conclusion was based upon the plain language of the rule, giving the court the option of dismissal or transfer of a case that was filed in an improper venue. The *Berryhill* conclusion was the majority view in 1995, *id.*, and it remains so. In fact, one authority states that "[t]here are very few cases holding that the court has the authority to retain an improperly venued case." Ahern & MacLean, *Bankruptcy Procedure Manual* § 1014.03, at p. 82 (citing *In re Capital Hotel Group, Inc.*, 206 B.R. 190 (Bankr. E.D.Mo.1997) and *In re Lazaro*, 128 B.R. 168 (Bankr.W.D.Tex.1991)).

 Subsequent to *Berryhill* and *Lazaro*, another bankruptcy judge in this district has opined that a combination of 28 U.S.C. § 1412's venue transfer provisions and Rule 1014 required a conclusion that the court receiving an improperly venued case did not have the option of retaining that case when presented with a timely venue motion. *In re McDonald*, 219 B.R.

804 (J. Latta). This Court has found no reason to alter its conclusion made in *Berryhill,* nor to reject the majority view, that it lacks any retention authority in this circumstance. Upon a finding, as in these cases, that a case was filed in the improper venue, and upon the filing of a timely motion, that original court has two options under the applicable and current statute and rule, either to dismiss the case, or if the interest of justice or convenience of the parties so dictate, to transfer the case to the properly venued court.

As both the *McDonald* and *Sauer* opinions recognize, under the best interpretation of the applicable statute and rule, "[t]his result is not harsh or rigid. It simply requires debtors to file their cases in the proper venue, and if that venue is inconvenient, the bankruptcy court of the proper venue may transfer the case to a more convenient forum pursuant to section 1412." *In re McDonald,* 219 B.R. at 807; *see also In re Sauer,* 2000 WL 33712207, at * 6.

## CONCLUSION

The Court has concluded, therefore, that these cases were filed in an improper venue, the Western District of Tennessee, by debtors who reside in Mississippi or Arkansas and have no valid claim to venue here under 28 U.S.C. § 1408, and that this Court has no authority to retain the improperly venued cases, notwithstanding any arguments of increased costs, convenience of the debtors or their attorneys, or equity. The Court has no choice left but to either dismiss the cases, a result that could be prejudicial to the debtors and creditors, or to transfer the cases to the proper venue. Orders of transfer to the proper district will be entered in each case.

## ETHICS ADDENDUM

Does it end there? It could, but as a matter of fairness, since the United States trustee has mentioned the possibility of seeking sanctions in the event of future similar filings, the Court suggests that attorneys in this district should think about the ethical issues that abound. The reported opinions summarized here are examples of some of the issues to consider. This Court, in this opinion, does not attempt to answer the following questions.

The Court first observes that Mississippi is in the Fifth Circuit, that Arkansas is in the Eighth Circuit, and that we are in the Sixth. It is not at all uncommon for the case authority from the three circuit courts to vary and even disagree. Permissive filings by debtors across circuit boundaries at the very least introduces an issue of whether debtors' attorneys must be knowledgeable of the circuit, and lower court, authority from the debtors' home circuit. Without such knowledge, how can the attorney properly advise the client that the Western District of Tennessee is an appropriate venue choice? Suppose, for example, the client is denied an exemption in this Court as it applies the debtor's home state law, but the debtor's attorney is not aware of case authority from Mississippi or Arkansas on point that would be favorable to the debtor. If, as a result, such authority is not brought to this Court's attention, has malpractice occurred? Ethical violations? Or, suppose the debtor is denied a full or partial discharge in this Court when the controlling law from the debtor's home circuit would have favored the debtor.

Is it appropriate for a debtor and the debtor's attorney to check the venue box on the initial page of official form 1, claiming proper venue, when it is clear that venue is not proper under 28 U.S.C. § 1408? *See In re Pickeral,* 267 B.R. 1 (Bankr.D.C.2001), where the court found that the debtor's attorney had intentionally

filed in the wrong district, out of convenience and time-constraint considerations, and refused to transfer the case; rather, the court dismissed the case with prejudice for 180 days. *See also* cases cited and discussed within that opinion, including *Dubin v. United States,* 380 F.2d 813 (5th Cir.1967). Ponder Rule 3.3(a)(1) of the Tennessee Supreme Court's Rules of Professional Conduct, providing that "[a] lawyer shall not knowingly make a false statement of fact or law to a tribunal."

Is it appropriate for a debtor and the debtor's attorney to leave the venue boxes blank on official form 1? *See United States v. Ellis,* 50 F.3d 419 (7th Cir.1995), where the debtor left the box calling for prior bankruptcy filings blank, and the court construed that act to be a false statement for purposes of the bankruptcy fraud statute.

Has any court awarded Bankruptcy Rule 9011 sanctions for a knowing violation of the venue statute? *See Blagg v. Miller,* 223 B.R. 795, which affirmed the bankruptcy court's award of monetary sanctions against the debtors, as well as against the debtors' attorney, for knowingly filing in an improper venue. As to the attorney, the sanction resulted from a misrepresentation of law to the trial court. *See also In re Pannell,* 253 B.R. 216 (S.D.Ohio 2000), where the district court affirmed the bankruptcy court's Rule 9011 sanctions against the debtor's attorney for knowingly filing in a venue where the debtor did not reside and where the attorney's venue choice was based solely on the convenience argument. "Appellants appear to argue that their conduct in filing this case in an improper venue was reasonable because they had gotten by with it in the past. Not only does this Court find that justification unprincipled, but it also finds it to be insuffi-

cient to require reversal of the bankruptcy court's decision." *Id.* at 220.